IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| OPTISTREAMS, INC., | ) | No. CV-F-05-117 REC/SMS |
| | ) | |
| | ) | ORDER DENYING PLAINTIFF'S |
| | ) | MOTION TO DISQUALIFY |
| Plaintiff, | ) | SAGASER, JONES & HAHESY |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| SEAN GAHAN, et al., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

On August 1, 2005, the court heard plaintiff Optistreams, Inc.'s motion to disqualify the law firm of Sagaser, Jones & Hahesy from further representation of Sean Gahan in this litigation.

Upon due consideration of the record and the arguments of the parties, the court denies this motion for the reasons set forth herein.

On December 22, 2004, Optistreams, Inc., then represented by Jory, Peterson, Watkins, Ross & Woolman (hereinafter Jory, Peterson), filed a Complaint in the Fresno County Superior Court

1

1 against Sean Gahan and Does 1-26, alleging causes of action for
2 defamation, breach of fiduciary duty, trespass to chattel,
3 computer tampering in violation of California Penal Code § 502
4 and 18 U.S.C. § 1030, and conversion.  The action was removed to
5 this court on January 25, 2005.  Gahan is represented by Howard
6 Sagaser and Melody Hawkins of Sagaser, Jones & Hahesy
7 (hereinafter referred to as Sagaser, Jones).

8      Optistreams has moved to disqualify Sagaser, Jones from
9 continued representation of Gahan in this litigation on the
10 ground that a conflict of interest has arisen because of Sagaser,
11 Jones' hiring of legal secretary Dawn Peel, who was employed by
12 Jory, Peterson from March 27, 2000 until June 2, 2005.  Ms. Peel
13 was legal secretary to Patti L. Williams, who was counsel of
14 record for Optistreams in this litigation until July 26, 2005,
15 when David Roberts and Brian Cuttone of Caswell, Bell & Hillison
16 were substituted as counsel of record for Optistreams.  While
17 employed at Jory, Peterson, Ms. Peel also was legal secretary to
18 Jason Parkin, counsel of record for Optistreams in ongoing
19 litigation in state court.  Optistreams contends that Ms. Peel
20 has knowledge of confidential information regarding Optistreams
21 and specific attorney-client communications regarding this
22 litigation.  Optistreams notes that Sagaser, Jones did not obtain
23 a waiver of this conflict of interest from Optistreams prior to
24 hiring Ms. Peel and contends that Sagaser, Jones did not erect an
25 "ethical wall" prior to hiring Ms. Peel.

26      The standard for resolving a motion to disqualify a law firm

2

who hires a nonlawyer employee with a conflict of interest is set forth in <u>In re Complex Asbestos Litigation</u>, 232 Cal.App.3d 572, 596 (1991):

> Absent written consent, the proper rule and its application for disqualification based on nonlawyer employee conflicts of interest should be as follows.  The party seeking disqualification must show that its present or past attorney's former employee possesses confidential attorney-client information materially related to the proceedings before the court.  The party should not be required to disclose the actual information contended to be confidential.  However, the court should be provided with the nature of the information and its material relationship to the proceeding ....
>
> Once this showing has been made, a rebuttable presumption arises that the information has been used or disclosed in the current employment.  The presumption is a rule of necessity because the party seeking disqualification will be at a loss to prove what is known by the adversary's attorneys and legal staff ... To rebut the presumption, the challenged attorney has the burden of showing that the practical effect of formal screening has been achieved.  The showing must satisfy the trial court that the employee has not and will not have any involvement with the litigation, or any communication with attorneys or coemployees concerning the litigation, that would support a reasonable inference that the information has been used or disclosed.  If the challenged attorney fails to make this showing, then the court may disqualify the attorney and law firm.

The Court of Appeal also stated:

> The most likely means of rebutting the presumption is to implement a procedure, before the employee is hired, which effectively screens the employee from any involvement in the litigation, a procedure one court aptly described as a '"cone of

3

silence"' ... Whether a potential will require a cone of silence should be determined as a matter of routine during the hiring process.  It is reasonable to ask potential employees about the nature of their prior legal work: prudence alone would dictate such inquiries ....

The leading treatise on legal malpractice also discusses screening procedures and case law.  (1 Mallen & Smith, Legal Malpractice (3rd Ed. 1989) §§ 13.18-13.19, pp. 792-797.) We find several points to be persuasive when adapted to the context of employee conflicts. 'Screening is a prophylactic, affirmative measure to avoid both the reality and appearance of impropriety.  It is a means, but not *the* means, of rebutting the presumption of shared confidences.' ... Two objectives must be achieved.  First, screening should be implemented before undertaking the challenged representation or hiring the tainted individual.  Screening must take place at the outset to prevent any confidences from being disclosed.  Second, the tainted individual should be precluded from any involvement in or communication about the challenged representation.  To avoid inadvertent disclosures and to establish an evidentiary record, a memorandum should be circulated warning the legal staff to isolate the individual from communications on the matter and to prevent access to the relevant files ....

The need for such a rule is manifest.  We agree with the observations made by the *Williams* court: '[Nonlawyer] personnel are widely used by lawyers to assist in rendering legal services.  Paralegals, investigators, and secretaries must have ready access to client confidences in order to assist their attorney employers.  If information provided by a client in confidence to an attorney for the purpose of obtaining legal advice could be used against the client because a member of the attorney's [nonlawyer] support staff left the attorney's employment, it would have a devastating effect both on the free flow of information between client and attorney and on the cost and quality of the legal services

4

> rendered by the attorney.' ... Further, no regulatory or ethical rules comparable to those governing attorneys, restrain all of the many types of nonlawyer employees of attorneys. The restraint on such employees' disclosing confidential attorney-client information must be the employing attorney's admonishment against revealing the information.

232 Cal.App.3d at 593-594.

   A.  <u>Possession of Confidential Information Materially Related to the Proceeding Before the Court</u>.

Optistreams contends that Ms. Peel possesses confidential information materially related to this action.

In so asserting, Optistreams relies on the Declaration of Patti Williams, a shareholder in Jory, Peterson, who avers that Ms. Peel was employed by Jory, Peterson as a legal secretary from March 27, 2000 and that Ms. Peel was her secretary during the entire time of her employment with Jory, Peterson. Ms. Williams avers that, since October 2003, Jory, Peterson has employed two legal secretaries, Ms. Peel and Beth Noel; that the two secretaries shared a common work area, are close friends, and often helped each other out. Ms. Neal is Mr. Woolman's secretary and Mr. Woolman has been the lead attorney on several cases involving Optistreams, including a case against several former employees who formed a competing company, <u>Optistreams v. NIA</u>, a case currently pending in the Fresno County Superior Court. Mr. Parkin is an associate attorney with Jory, Peterson who has been assigned to work on the <u>Optistreams v. NIA case</u>. Ms. Peel was Mr. Parkins legal secretary from October 2004 and has assisted

5

him in the <u>Optistreams v. NIA</u> case.  Ms. Williams further avers that Jory, Peterson has handled several other litigation matters for Optistreams and has advised Optistreams regarding various employment matters.  Ms. Williams avers that she was the attorney at Jory, Peterson primarily responsible for handling the instant case and the attorney primarily responsible for handling an arbitration involving Tony Coles, a former employee of Optistreams.  Ms. Williams frequently advised Optistreams on various employment matters and represented Optistreams before the California Labor Commissioner.  Ms. Williams avers that Ms. Peel assisted her in each of these matters.  Ms. Williams further avers in pertinent part:

> 8.  Jory, Peterson maintains its client files in a file room.  Litigation files consist of separate files for correspondence, client documents, attorney notes, legal memoranda, discovery documents, and pleadings.  All employees of the firm have access to the files.  Ms. Peel had access to all files in the file room, including all files relating to Optistreams.
>
> 9.  Jory, Peterson has a policy with regard to how incoming facsimile messages are handled.  The facsimiles are first taken to the firm's secretaries.  The secretaries are required to read the facsimile messages in order to determine whether there are any dates to be calendared, and to check for any issues of immediate concern.  The secretaries then give the facsimile messages to the attorneys.  Therefore, under this policy, Ms. Peel was responsible for reviewing every facsimile message directed to me, including attorney-client communications.  I am certain that Ms. Peel has reviewed attorney-client facsimile communications from Optistreams to me and have specific recollections of Ms. Peel giving me such communications.

10. Jory, Peterson has a policy with regard to how incoming mail is handled. The mail for each attorney first goes to the secretaries. The secretaries are required to review the mail and read any correspondence to determine whether there are any dates to be calendared and to check for any issues of immediate concern. The secretaries then provide the mail to the attorneys. Therefore, under this policy, Ms. Peel is responsible for reviewing all correspondence sent to me, including attorney-client communications. I am certain that Ms. Peel has reviewed attorney-client communications from Optistreams to me and have specific recollections of Ms. Peel giving me such communications.

11. Jory, Peterson utilizes a computerized network in order to organize all documents created within the firm. I know this because each firm employee, including attorneys and secretaries, has access to documents within the network. Access does not depend upon whether a particular attorney or secretary is working on a particular matter. During her employment with Jory, Peterson, Ms. Peel had access to and did in fact access confidential computerized records relating to this matter.

12. Jory, Peterson utilizes a software system entitled 'Worldox' in order to index and manage documents created on the firm network. I am familiar with this system and have utilized it on a daily basis since the firm installed it. Under this system, each document is assigned a number. The document may then be accessed by all users of the system using the document number or other information such as the client number, author, type of document, key terms, and so forth. It is possible to run an 'audit trail' on documents within the Worldox system to determine which individuals have accessed, opened, copied or printed any particular document. On June 2, 2005 and June 8, 2005, I performed an audit trail of confidential attorney-client communications, consisting of letters from William Woolman, my partner, Shelley Bryant, my partner, and me, to Optistreams. Attached as collective Exhibit

7

> A are the documents generated by this document trail as to four documents within the firm's computer system. I personally printed these documents once I completed running the audit trails. Three of the four documents pertain to the present matter - <u>Optistreams v. Gahan</u>. The fourth document pertains to <u>Optistreams v. NIA</u>.

In paragraphs 13-14 of her declaration, Ms. Williams avers that the audit trail demonstrates that Ms. Peel viewed documents containing attorney-client information in February and March, 2004. In paragraph 15, Ms. Williams avers:

> 15. The third page of Exhibit A pertains to document 537566. I prepared this document and therefore, am familiar with its contents. Document number 537566 is a letter dated March 23, 2005 from me to Ms. Alison Haugan and Mr. Steve Genuser of Optistreams. In this letter, I discuss the status of the case against Mr. Gahan, including my theories, impressions and plans regarding the case. This letter contains highly confidential attorney-client communications. The audit profile regarding this letter shows that Ms. Peel opened the letter on May 23, 2005, which was approximately one week after she gave notice of her intention to join Mr. Sagaser's firm.

Sagaser, Jones argue that Ms. Williams' declaration and supporting exhibits do not establish that Ms. Peel possessed confidential information materially related to the instant case. In so asserting, Sagaser, Jones relies on the Ms. Peel's declaration, wherein she avers in pertinent part:

> 3. ... I have no recollection of reviewing, copying or printing the documents Ms. Williams has listed in paragraphs 13 and 14 of her declaration. However, it was routine practice for the legal secretaries, paralegals and attorneys at Jory, Peterson to open documents for the specific purpose of

8

copying all or part of the documents including the names and addresses of clients or other addresses.  It was common practice for the legal secretaries to open previously prepared pleadings and correspondence in order to copy names and addresses from the letters and proofs of service.

4.   Although I do not specifically recall opening the particular documents referred to in Ms. Williams' declaration on the dates listed, I may have opened those documents for the specific purpose of obtaining the correct address for Mr. Genuser.  When I opened documents for the purpose of copying names and addresses, I did not review the documents but only copied the name and address and closed the document.  I have no recollection of the content of those documents.

5.   As to Ms. Williams' statement in paragraph 15, I do not have a specific recollection of opening the letter to Ms. Haugen and Mr. Genuser on May 23, 2005. However, Ms. Williams did instruct me to fax and mail a letter to Howard Sagaser regarding this case on May 23, 2005.  In keeping with Jory, Peterson's practice, I would have sent a copy of Ms. Williams' May 23, 2005 letter to Mr. Sagaser to Optistreams and I may have opened Ms. Williams' letter to Ms. Haugen and Mr. Genuser to copy their names and addresses for the envelope to mail the letter.  If I did open the letter to Mr. Haugen and Mr. Genuser, I did not read the letter nor do I have any recollection of its contents.

6.   Additionally, it is possible someone else at Jory, Peterson could have opened the documents from my computer.  The legal secretaries sit in a large open area with no partitions and no doors.  The secretaries' computers are readily accessible to anyone in the firm.  Generally, when I would come to work at Jory, Peterson I would sign onto my computer using my initials 'DEP' and I would leave it running all day.  I would also open the windows for Word and Worldox and leave them open all day.  Since my computer was already on and I was logged in, anyone could have used my computer to access, review, copy

9

or print documents on my computer and it would show up on the audit trail as if I had accessed, reviewed copied or reviewed [sic] the document. Oftentimes I was not at my desk, as I would go in the file room to retrieve files or use the copier and during the lunch hour I would generally go out of the office for lunch.

7. Regarding Jory, Peterson's policy regarding incoming faxes and mail, while it was my responsibility to review the faxes and the mail to check for dates to be calendared and issues that had to be addressed immediately, my review of the incoming documents was only cursory to review for dates or immediate issues; I did not review the documents for content, particularly since I had to review incoming documents for four attorneys.

8. Similarly, when I was asked to proof outgoing letters or pleadings that were prepared by an attorney, I did not review for content, but merely reviewed the documents for grammatical errors and misspellings. Likewise, when I typed letters and pleadings, I did not edit the document or analyze its content.

9. At the time I resigned my employment as a legal secretary at Jory, Peterson I was working for four attorneys, three of whom were partners. I rarely, if ever, had the occasion to know a case on an intimate basis. Neither Patti Williams nor Jason Parkin ever informed or discussed with me their litigation strategy in any of the Optistreams cases. At no time was my opinion asked as to the current strategy in any Optistreams case, nor did I have any information pertaining to any future strategy in any Optistreams case. I also have no recollection or knowledge of trade secrets or confidential information pertaining to Optistreams or any of the Optistreams cases. My involvement with Optistreams and its cases was limited to typing letters and pleadings, mailing and filing pleadings and mailing correspondence.

In reply, Optistreams submits a further declaration from Ms.

10

Williams in which she avers in pertinent part:

> 7. ... It is true that attorneys at Jory, Peterson do not typically consult administrative assistants such as Ms. Peel regarding their opinions as to case strategy; however, Ms. Peel was well aware of the attorneys' opinions, impressions and strategy regarding the Optistreams cases. I know this because my partners William Woolman, Shelley Bryant and I drafted letters to Optistreams in which we expressed our opinions regarding the case, our strategies and how we felt about certain claims. Jory, Peterson's computer audit trail shows that Ms. Peel accessed each of these letters. Also, Ms. Peel's job duties required her to review, correct and format correspondence prepared by me and attorney Jason Parkin. Ms. Peel was required to proofread our letters for content, syntax and grammar. It is inevitable that when Ms. Peel reviewed, these letters [sic] in accordance with her job duties, Ms. Peel would have become familiar with the content of these letters and learned our future strategies as well as our opinions regarding the merits of the claims at issue in this case.

Optistreams has shown that Ms. Peel possesses confidential information materially related to this action. Ms. Peel actually read the letters prepared by Optistreams' attorneys and accessed files and documents relevant to this litigation. That Ms. Peel says she does not remember the content is of no moment because these actions all happened very recently and the letters involved the instant litigation. Her assertion that someone else could have used her computer to access the documents is pure speculation, especially in the absence of any averment that it was a common practice for others at Jory, Peterson to use her computer for this purpose.

11

1     Consequently, the court concludes that Optistreams has made
2 a sufficient showing to invoke the rebuttable presumption that
3 confidential information regarding this case has been used by or
4 disclosed to Sagaser, Jones.  Therefore, the burden shifts to
5 Sagaser, Jones to rebut the presumption.
6     B.   Formal Screening.
7     Sagaser, Jones argues that they have rebutted the
8 presumption.
9     In so asserting, when Ms. Williams wrote to Mr. Sagaser by
10 letter dated May 23, 2005 requesting that Sagaser, Jones recuse
11 itself from the instant litigation because Ms. Peel had been
12 hired by Sagaser, Jones, Mr. Sagaser responded by letter to Ms.
13 Williams dated May 24, 2005:

> I am in receipt of your letter dated May 23,
> 2005, in which you request this office to
> voluntarily recuse itself from representing
> Sean Gahan in the litigation Optistreams had
> initiated against Mr. Gahan.  By this letter,
> I wish to inform you that Dawn Peel contacted
> our office about possible employment.  Our
> office did not initiate the contact.
> Moreover, Ms. Peel is scheduled to work for
> attorneys who have had no involvement in the
> *Optistreams v. Gahan* litigation.  Our office
> will be constructing a privacy wall around
> Ms. Peel and she will not be allowed to work
> on the *Optistreams v. Gahan* matter, even
> though she was not an attorney or paralegal
> in your office and will not be an attorney or
> paralegal in our office.

Mr. Sagaser sent a letter to Ms. Peel dated May 24, 2005, in
which he stated:

> Recently, Patti Williams has objected to our
> firm representing Sean Gahan with respect to
> a lawsuit that was filed by Optistreams

12

>against Mr. Gahan. I am the attorney who is representing Sean Gahan, and Patti Williams and Jason Parkin have been representing Optistreams in the litigation. By this letter, I wish to inform you that prior to or upon your employment with our firm on June 6, 2005, you are not to divulge to anyone in our firm any information regarding Optistreams, much less anything involving the case filed by Optistreams against Sean Gahan. At no time are you to access the *Optistreams v. Sean Gahan* file in our office and no attorney who you are assigned to work for will be allowed to work on the file. This is commonly known as a 'privacy wall.'
>
>Presently, the only active litigation of which I am aware involving Jory, Peterson ... and our firm is the *Optistreams v. Gahan* matter. However, if you are aware of any other matters in which the two firms are opposing counsel, I would appreciate your bringing it to my attention so I can insure that the proper privacy wall and security arrangements are in place.
>
>If you have any question concerning any of the issues set forth in this letter, please feel free to give me a call.

Mr. Sagaser's letter to Ms. Peel was copied to Ms. Williams and Mr. Woolman. Mr. Sagaser further avers in his declaration in opposition to this motion:

>15. Sometime in May, 2005, Dawn Peel contacted one of the attorneys in our office for whom she used to work, Michael Helsley. Ms. Peel inquired about the possibility of employment at our firm. In response to Ms. Peel's inquiry, our firm extended an offer for her to come to work for our firm as the legal secretary for Michael Helsley and K. Pancho Baker. Neither Mr. Baker nor Mr. Helsley has been involved in the <u>Gahan v. Optistreams</u> [sic] litigation, nor has this case been the subject of discussion at any attorney meetings. Sometime in May of 2005, it was agreed between Mr. Helsley and Ms. Peel that she would start employment at our

13

|     |     |
| --- | --- |
| 1   | firm on June 6, 2005.  The only individuals involved in hiring Peel were Mr. Helsley, Mr. |
| 2   | Baker, and the Sagaser Firm Administrator Lynn Hoffman.  I was not involved in the |
| 3   | hiring of Dawn Peel. |
| 4   | ... |
| 5   | 19.  Prior to Ms. Peel starting her employment at our office, we had our computer |
| 6   | system modified to block her from any access to the <u>Optistreams v. Gahan</u> computer files. |
| 7   | Only those attorneys who are actively working on the <u>Optistreams</u> case and their legal |
| 8   | assistants are allowed access to the computer files for the <u>Optistreams v. Gahan</u> |
| 9   | litigation.  As stated previously, the attorneys for whom Ms. Peel works at our firm |
| 10  | have never and do not currently work on the <u>Optistreams</u> case and are not allowed to work |
| 11  | on the <u>Optistreams</u> case. |
| 12  | 20.  Additionally, the <u>Optistreams v. Gahan</u> files have been removed from our central file |
| 13  | room and are kept in a separate room that is locked and only attorney Melody Hawkins, my |
| 14  | law clerk Tracie Goodwin, paralegal Gina Klein, my secretary Elaine Devlin and me, and |
| 15  | our file room personnel who have access to the files. |

Mr. Sagaser further avers that he sent an e-mail to everyone at Sagaser, Jones on June 2, 2005, which e-mail states:

> Re: Issues Concerning Optistreams v. Gahan - 6489-002
>
> As everyone is aware, Dawn Peel will be joining our firm on June 6, 2005.  The attorneys for Optistreams, which are represented by the law firm where Dawn is currently working are objecting to my continued representation of Sean Gahan.  Enclosed please find a copy of the letter that I sent Dawn Peel on May 24, 2005.  I wanted to make certain that everyone was aware of this situation as we have constructed a privacy wall and under no circumstances is anyone to discuss the *Optistreams, Inc. v. Sean Gahan* matter with

14

>   Dawn Peel.  Presently the only two attorneys who have worked on this matter are myself and Melody.  Enclosed please find a copy of the letter that I received today informing me that Optistreams intends to file a motion to disqualify this firm.  Therefore, it is essential that everyone abide by the privacy wall that we are constructing and your assistance in insuring that no one discusses the *Optistreams v. Gahan* matter with Dawn Peel is mandated.
>
>   If anyone has any questions, please feel free to give me a call.

Ms. Peel also avers in pertinent part:

>   10.  When I resigned my employment at Jory, Peterson, I spoke to Ms. Williams about Optistreams.  She stated that I should no longer work on the OptiStreams v. Gahan matter.  In response, I informed her that I no longer wanted to work on **any** OptiStreams matter, including the OptiStreams v. NIA case.  She agreed.  From that point forward, if a file clerk of receptionist handed me any mail or faxes on any OptiStream matter, without reading it, I would immediately hand the document to the other secretary in the office, Beth Noel, and she would handle it.
>
>   11.  After I had given my notice to resign and after Ms. Williams had agreed that I should not work on any OptiStreams cases, on May 23, 2005, she handed me a letter to Mr. Sagaser dated May 23, 2005 regarding this case.  It was already prepared in final form.  She asked me to fax it to Mr. Sagaser's office.  Ms. Williams told me that I would be unhappy with the content of the letter, but I needed to fax it to him anyway, as it was 'nothing personal' against me.
>
>   12.  There was another occasion after May 23, 2005, when Ms. Williams asked me to fax a document in the OptiStreams v. Gahan matter, as the other secretary was not in the office that day.  I refused to do so, and asked her to give it to the paralegal, Lela Mulligan, to handle.  It should be noted that faxing documents from Jory, Peterson's fax machine

15

> is relatively simple.  It is not clear why
> Ms. Williams asked me to fax the document
> when she had previously told me I was not to
> work on the OptiStreams v. Gahan case.
>
> 13.  To my knowledge, Jory, Peterson did not
> put up a 'firewall' after I gave my notice.
> To my knowledge, the OptiStreams' files were
> not removed from the general filing area and
> they did not put a block on my computer
> access.  Jory, Peterson informed one of the
> many receptionists not to give me mail or
> faxes pertaining to OptiStreams v. Gahan, but
> the others continued to do so.  I would not
> review any mail or faxes pertaining to any
> Optistreams matter that were given to me, but
> would immediately hand them to the other
> secretary without reviewing or reading them.
>
> ...
>
> 17.  Since my employment at Sagaser, Jones
> ..., I have had no contact whatsoever with
> any matter pertaining to OptiStreams, other
> than having to respond to the allegations set
> forth in the declarations of Jason Parkin and
> Patti Williams in this case.

Optistreams argues that Sagaser, Jones has not rebutted the presumption because Sagaser, Jones did not institute the "privacy wall" prior to or during Ms. Peel's initial interview for employment.  Optistreams contends that Sagaser, Jones knew or should have known that Ms. Peel's duties at Jory, Peterson included being legal secretary to one of the attorneys representing Optistreams in Optistreams v. Gahan.

However, the record in this matter establishes that the attorneys at Sagaser, Jones approached by Ms. Peel for employment and who interviewed her had and have no involvement in Optistreams v. Gahan.  Mr. Sagaser had no involvement in the decision to hire Ms. Peel.  The better practice would have been

16

for Mr. Helsley, Mr. Baker, Ms. Hoffman to ascertain from Ms. Peel at the time of her interview by them whether she had performed any secretarial tasks for attorneys at Jory, Peterson on cases in which attorneys for Sagaser, Jones were opposing counsel.  However, under the circumstances before the court, the failure to make this inquiry does not negate the effectiveness of the steps taken by Sagaser, Jones to erect the privacy wall before Ms. Peel ceased working for Jory, Peterson and commenced working for Sagaser, Jones.  The showing made by Sagaser, Jones demonstrates to the court's satisfaction that Ms. Peel has not and will not have any involvement with this litigation while employed at Sagaser, Jones, or any communication with attorneys or coemployees at Sagaser, Jones concerning this litigation that would support an inference that the confidential information has been used or disclosed.  The record establishes that Mr. Sagaser took immediate steps to prevent disclosure to Sagaser, Jones of confidential information by Ms. Peel by warning Ms. Peel in writing that she must not do so, preventing her from obtaining access to any information at Sagaser, Jones concerning the case, and specifically advising all of the members and employees of Sagaser, Jones before Ms. Peel began work there that none of them must discuss in any way this case with Ms. Peel.  The record also establishes that Ms. Peel was not hired to assist in this litigation and that she was hired to assist other lawyers in the firm who have not had and do not have any involvement in this litigation.

ACCORDINGLY, plaintiff's motion to disqualify Sagaser, Jones & Hahesy is denied.

IT IS SO ORDERED.

**Dated: August 8, 2005**          /s/ **Robert E. Coyle**
668554                             UNITED STATES DISTRICT JUDGE